United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE BUCHANAN,<br>　　　　Plaintiff,<br>　　v.<br>VUORI, INC.,<br>　　　　Defendant. | Case No. 23-cv-01121-NC<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 42 |

Plaintiff Terrence Buchanan moves for preliminary approval of a class action settlement, unopposed by Defendant Vuori, Inc., for various California and federal wage and hour claims. Based on the outstanding questions and concerns discussed below, the Court DENIES without prejudice the motion for preliminary approval of the settlement.

**I.　BACKGROUND**

Plaintiff filed a class action suit alleging Defendant failed to pay hourly, non-exempt employees overtime wages, wages owed at termination, and failed to provide accurate wage statements in violation of California law and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.* ECF 15. Following limited discovery and mediation, the parties executed a global settlement agreement. ECF 42 (Mot.) 5–6, 8; ECF 50. The settlement defines two classes: a California class under Rule 23 that includes "all individuals who held an hourly, nonexempt retail position at Vuori in California from August 12, 2021 to

December 8, 2023" and who do not opt out of the action; and a nationwide FLSA class that includes individuals "who held an hourly, non-exempt retail position at Vuori outside of California from March 14, 2020 to December 8, 2023" and who consent to join the action. ECF 50 § 5; Fed. R. Civ. P. 23. The settlement provides for a total settlement amount of $1,100,000 with reversion to a cy pres awardee. ECF 50; Mot. 8; ECF 54 (Suppl. Br.) at 6.

Plaintiff filed an unopposed motion for preliminary approval of the class action settlement. Mot. The Court issued an order addressing language in the proposed California class notice that conflicted with the terms of the settlement agreement, ECF 49, and the parties filed an amended notice, ECF 51. The Court then issued an order to show cause and for supplemental briefing to address various questions regarding the proposed settlement. ECF 53. The order indicated the motion did not provide all information outlined in the Northern District's Procedural Guidance for Class Action Settlements, and ordered additional briefing as to points 1(a), 1(b), 1(d), 1(f), 2(b), 8, 10, and 11. ECF 53. In addition, the Court ordered Plaintiff's counsel to show cause for failure to appear at the hearing on the motion as originally scheduled. ECF 53. The parties filed a joint supplemental brief and Plaintiff's counsel responded to the order to show cause. Suppl. Br.; ECF 55. All parties have consented to magistrate judge jurisdiction. ECF 6, 11.

## II. LEGAL STANDARD

A district court must approve any proposed settlement of a Rule 23 class action before it becomes final. Fed. R. Civ. P. 23(e). Despite the Ninth Circuit's "strong judicial policy" in favor of settlement of class actions, *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019), a court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "[P]reliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Haralson*, 383 F. Supp. 3d at 967 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Specifically,

2

1   courts should assess whether:
2       (A) the class representatives and class counsel have adequately represented the class;
3       (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D); *In re Cal. Pizza Kitchen Data Breach Litig.*, No. 23-55288, 2025 WL 583419, at *5 (9th Cir. Feb. 24, 2025). Settlement agreements negotiated prior to class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval." *In re Bluetooth Headset Prods. Liab. Litig.*, 564 F.3d 935, 946 (9th Cir. 2011). In examining the fairness of the proposed settlement, a court must consider the settlement "as a whole"—it "must stand or fall in its entirety." *Haralson*, 383 F. Supp. 3d at 967 (citation omitted).

The FLSA permits employees to bring an action against an employer on behalf of themselves "and other employees similarly situated," provided the similarly situated employees give "consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Settlement of a collective FLSA action must be approved by either the Secretary of Labor or a district court. *Yue Zhou v. Wang's Rest.*, No. 05-cv-0279-PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007). A district court may approve a proposed FLSA settlement if "the settlement is a fair and reasonable resolution of a *bona fide* dispute." *Id.* "To make this determination, 'district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements.'" *Rodriguez v. Belfor USA Grp., Inc.*, No. 22-cv-02071-VKD, 2024 WL 3012798, at *17 (N.D. Cal. June 13, 2024) (citation omitted).

3

### III. DISCUSSION

Without offering a factor-by-factor assessment of the parties' proposed settlement, the Court identifies various concerns and deficiencies within the motion and settlement that in turn undermine the Court's ability to ensure the settlement is reasonable, fair, and the result of informed and non-collusive negotiations. *See Haralson*, 383 F. Supp. 3d at 967. The Court defers assessment of whether a class exists until a subsequent motion for preliminary approval or motion for class certification. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (discussing how a district court must assess whether a class exists and the fairness of the proposed settlement for preliminary approval prior to class certification), *superseded in part by Cal. Pizza Kitchen*, 2025 WL 583419, at *5.

At the outset, the Court notes that Plaintiff's briefing often appears hasty, slipshod, and, occasionally, incomplete, and that Plaintiff's counsel failed to appear for the initial hearing on the motion due to a calendaring error. *See* ECF 42, 55; Suppl. Br. The parties have at times overlooked discrepancies between their signed settlement agreement, proposed class notices, and the motion. *See* ECF 49, 53. And their supplemental briefing did not thoroughly address all the Court's questions, and in some cases created more questions than it answered, as discussed below. *See* ECF 53; Suppl. Br. Where the Court must ensure fairness and diligence on behalf of absent class members, these considerations do not weigh in the parties' favor. S*ee In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights.").

Turning to the substance of the proposed settlement, the Court addresses the classmembers' estimated recoveries, the tax allocation for those recoveries, the scope of releases, and whether the FLSA class members must consent to magistrate judge jurisdiction, as well as additional deficiencies.

#### A.  Estimated Classmember Recovery

To determine whether a proposed settlement falls within the range of possible approval, "courts primarily consider plaintiff's expected recovery balanced against the

4

value of the settlement offer." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) (citations omitted). Although "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate," *Rodriguez*, 2024 WL 3012798, at *12 (citation omitted), a court must know "the maximum amount that the putative class members could have recovered" to evaluate the settlement. *Haralson*, 383 F. Supp. 3d at 969–70 (citation omitted). Because this is "perhaps the most important factor to consider" at the preliminary approval stage, the parties must show their work. *Id.*

### 1. California Class

The motion states that Plaintiff's hired economist estimates California class members are owed $124,627 in lost overtime wages, while Plaintiff's counsel estimates the class is owed $197,804,83. Mot. 6–8. Plaintiff's counsel acknowledges his calculations "were $70,000 higher," but "deferred to the expertise of the Economist he employed for this case." Mot. 7–8. Given that Plaintiff's economist provided a "rough draft" estimate of lost overtime wages owed, a subsequent motion should provide additional explanation, perhaps through the declaration of Plaintiff's economist, as to why his estimate is more appropriate than that by Plaintiff's counsel. Mot. 7.

The motion also states Plaintiff's economist calculated the penalties owed to the class under California Labor Code § 203 as $4,339,368, and one year of penalties under § 226 as $2,604,000, for a total of $6,943,368 in penalties owed. Mot. 6–7. Under the proposed settlement agreement, the California class will receive $674,221, of which $589,103 would account for penalties. The motion acknowledges the significant discrepancy between the total possible recovery of penalties and the amount of penalties to be paid under the settlement. *See* Mot. 18–20. The Court notes, however, that the estimate provided for the total penalties owed only accounts for one year of penalties under § 226, even though "Defendant had been improperly calculating overtime pay since August 12, 2021, and ended the practice in July 2023," and the California class is defined to include employees from a period of nearly two and a half years. Mot. 20; Suppl. Br. at 2. Any

5

subsequent motion must identify the full amount of penalties the California class could recover, including for the entire period Defendant is alleged to have engaged in improper practices, or explain why providing such an estimate would not be appropriate here.

Moreover, although the Court previously found the "motion's discussion of penalties [] difficult to follow and requires clarification," the parties did not provide additional explanation on the calculation of penalties in their supplemental briefing. ECF 53; *see* Suppl. Br. The Court also notes that the estimated rates of class participation can influence any analysis of classmembers' expected recovery under a settlement agreement. *See Nen Thio*, 14 F. Supp. 3d at 1336 (estimating classmember recovery "assuming a 50% participation rate"). The motion here estimates 50% participation by California class members and a "lower percentage" by FLSA class members. Mot. 24. But the parties' supplemental brief states "[t]he Claim Administrator estimates a 30% return rate for claim forms based on experience with comparable settlements." Suppl. Br. 5; ECF 54-2 ¶ 4. In addition to this discrepancy, the parties do not provide "the identity" of comparable settlements "used for the estimate, and the reason for the selection of those examples," in contravention of 1(f) the Northern District's guidance for class action settlements. It is likewise unclear if the revised 30% return rate refers to opt-in forms from the FLSA class or opt-out forms from the California class. *See* Suppl. Br. 5.

### 2. FLSA Class

The motion estimates that the FLSA class is entitled to $212,540 in wages and liquidated damages. Mot. 7. The settlement allocates $106,279 to the FLSA class for lost wages absent liquidated damages. Mot. 7–8. In contrast, the parties' supplemental brief states that the FLSA settlement "consist[s] of liquidated damages, maximizing the net amount for class members." Suppl. Br. 5. The parties must explain this discrepancy and clarify whether the monetary amount allocated for the FLSA class under the settlement agreement includes liquidated damages or not. If not, they must also explain why excluding liquidated damages is appropriate here. *See Rodriguez*, 2024 WL 3012798, at *17 (explaining courts are often reticent to exclude liquidated damages without adequate

6

1    explanation that doing so is appropriate based on the employer's good faith and reasonable
2    beliefs); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-05243-SBA, 2012 WL
3    6629608, at *2 (N.D. Cal. Dec. 19, 2012) ("Employees may not negotiate away liquidated
4    damages or back wages in the interest of achieving a settlement.").

### B. Tax Allocation

The settlement classifies 15% of the payments to classmembers as wage income and 85% as non-wage income for tax purposes. ECF 50 § 14.3. Although the parties indicated in supplemental briefing that they believe this tax allocation "is appropriate" based on the inclusion of payments for penalties, the Court finds the parties fail to adequately explain why they selected this tax allocation rate or show their work as to why the proposed allocation rate is reasonable. Suppl. Br. 2–3, 5.

For example, the motion states, "The parties agreed to allocate the net settlement fund to 15% to wages and 85% to penalties and interest." Mot. 8. But the payments to the California class, as proposed, consist of 21% lost wages, and the California class's maximum recovery consists of 2% lost wages. Defendant also proffers that "the amount of unpaid wages" from any alleged overtime violations "would be quite small," with "penalties for wage statement and waiting time penalties mak[ing] up as much as 95% of the total 'worst case' exposure." Suppl. Br. 3. Moreover, it is unclear whether this tax allocation applies to the FLSA class because, as discussed, the proposed payments to FLSA classmembers do not appear to include penalties or liquidated damages. The parties must reconcile these inconsistencies and clarify their reasoning for selecting this tax allocation rate.

### C. Scope of Releases

Sections 17.2 and 17.3 of the proposed settlement agreement provide that all participating class members, "forever, fully, irrevocably and unconditionally release and discharge the Released Parties from all Wage and Hour Claims that were or could have been asserted, including but not limited to all claims pleaded in the First Amended Complaint in the Action . . ." ECF 50 §§ 17.2, 17.3. The releases "apply to release Vuori

7

1   and its subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators,
2   business units, shareholders, members, and all of its and their predecessors and successors,
3   officers, directors, agents, employees and assigns, and all persons acting through, under or
4   in concert with them, including any party that was or could have been named as a
5   defendant in this Action." ECF 50 § 17.1.
6   　　　The Court previously stated that the release of claims for both classes were
7   overbroad because they included claims that arose before and after the dates of the relevant
8   class periods. ECF 53 at 2. The parties responded that they "are agreeable to modifying
9   the language of Sections 17.2 and 17.3 of the Settlement Agreement and class notices
10  [and] agree that the time periods of the release shall track the relevant class periods."
11  Suppl. Br. 2. Even so, the scope of the released claims and parties may still be overbroad.
12  　　　"A settlement agreement may preclude a party from bringing a related claim in the
13  future 'even though the claim was not presented and might not have been presentable in
14  the class action,' but only where the released claim is 'based on the identical factual
15  predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*,
16  598 F.3d 581, 590 (9th Cir. 2010) (citation omitted). Here, the proposed releases apply to
17  "all Wage and Hour Claims that were or could have been asserted" in this litigation. ECF
18  50 §§ 17.2, 17.3. The releases expressly include claims beyond those brought in the first
19  amended complaint. ECF 50 §§ 17.2, 17.3. As such, any subsequent motion for
20  preliminary approval should explain why the scope of the releases are not overbroad as
21  they apply to each class, and whether "all Wage and Hour Claims" is limited to claims
22  based on the same factual predicate. *See Hesse*, 598 F.3d at 590; *Haralson*, 383 F. Supp.
23  3d at 967 ("[C]ourts in this district routinely reject proposed class action settlement
24  agreements that try to release all claims in a wage-and-hour case relating to compensation
25  as overbroad and improper." (citation omitted)).
26  　　　Moreover, the language of the releases appears "too broad for class members to
27  ascertain which part[ies] are released from future claims." *See* ECF 50 § 17.1; *Prescott v.*
28  *Bayer Healthcare LLC*, No. 20-cv-00102-NC, 2021 WL 12104535, at *2 (N.D. Cal. Apr.

29, 2021). Again, the parties must explain why including a range of parties beyond Vuori and "any party that was or could have been named as a defendant in this Action" in the releases is appropriate.

### D. FLSA Classmember Consent

Courts have differed as to whether to require FLSA classmembers "to consent to or decline magistrate judge jurisdiction at the same time the member opts in to the settlement." *Rodriguez*, 2024 WL 3012798, at *18; *compare id. with Piper v. RGIS Inventory Specialists, Inc.*, No. 07-cv-00032-JCS, 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007) (declining to invalidate FLSA opt-in forms that did not ask for magistrate judge consent because "an understanding that this case is being handled by a magistrate judge rather than a district court judge is not required to have a basic understanding of the case for the purposes of consent"). The parties should consider and address this issue in any subsequent motion for preliminary approval.

### E. Other Deficiencies

As noted, the parties' supplemental briefing did not adequately address all of the Court's concerns or elaborate on certain points outlined in the Northern District's Procedural Guidance for Class Action Settlements. In addition to the deficiencies discussed above, the Court notes the supplemental briefing provides limited data on comparable cases rather than all information outlined in 11(a), and highlights one case that appears materially dissimilar. *See* Suppl. Br. 6; ECF 54-1 ¶ 4. Similarly, although the parties attach an overview from Simpluris to address the settlement administrator's procedures for securely handling data, the exhibit does not appear to offer the depth of information contemplated by 2(b) and the associated data protection checklist. *See* Suppl. Br. 6; ECF 54-3.

### IV.  CONCLUSION

The Court DENIES without prejudice the unopposed motion for preliminary approval of the class action settlement. The Court encourages the parties to carefully review and address the Court's concerns as discussed above and the guidance from the Northern

9

District in connection with any subsequent motion for preliminary approval. A subsequent motion should also include any updated class notices and executed settlement agreement.

**IT IS SO ORDERED.**

Dated: March 3, 2025

_____
NATHANAEL M. COUSINS
United States Magistrate Judge