James Dal Bon (SBN CA 157942)
THE WISDOM LAW GROUP APC
1625 The Alameda #207
San Jose, CA 95126
Telephone: 408.915.3700
jdb@wagedefenders.net

Attorney for Plaintiff

TERRENCE BUCHANAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE BUCHANAN, an individual, on behalf of himself, and on behalf of Putative Plaintiffs consisting of all persons similarly situated,<br><br>        Plaintiff,<br><br>            v.<br><br>VUORI, INC., a Delaware Corporation; and DOES 1 through 100,<br><br><br>        Defendant. | CASE NO. 5:23-CV-1121-NC<br><br>**CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT** |

Plaintiff hereby submits this corrected memorandum of points and authorities for approval of a class action settlement. The corrected version simply adds a table of contents and fixes a minor spelling error. Nothing else has been changed from the original. This version simply helps the reader navigate the sections in the motion.

TABLE OF CONTENTS

I.    INTRODUCTION                              1

II.   BACKGROUND                               1

  A.  The Claims                          1

  B.  Procedural History                   2

  C.  Court's March 3, 2025 Order          2

  D.  Revised Settlement and Expert Analysis    2

III.  SETTLEMENT TERMS                         3

  A.  Classes and Amount                  3

  B.  Allocation and Distribution         3

   1. Damages Analysis                 3

   2. Settlement Allocation            4

   3. Pro Rata Distribution            4

  C.  Tax Treatment                       5

  D.  Releases                            6

  E.  Notice, Administration, and Participation    6

  F.  Estimated Participation Rates       7

  G.  Fees, Costs, and Service Award      11

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL    11

  A.  Standard                           11

  B.  Adequate Representation and Arm's-Length Negotiation 12

C.  Adequacy of Relief                                    12

D.  Equitable Treatment                                   14

E.  No Obvious Deficiencies                               17

F.  Falls Within Range of Possible Approval              18

V.   CLASS CERTIFICATION FOR SETTLEMENT                   18

A.  California Class (Rule 23)                            18

B.  FLSA Collective (29 U.S.C. § 216(b))                 19

C.  Multi-State Settlement Structure                     19

VI.   PROCEDURAL GUIDANCE COMPLIANCE                      21

VII.  PROPOSED SCHEDULE                                   21

VIII.  CONCLUSION                                         22

1

**TABLE OF AUTHORITIES**

2

**SUPREME COURT CASES (ALPHABETICAL ORDER):**

3

1. Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) - Pages 8, 18

4

2. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011) - Page 18

5

6

**APPELLATE COURT CASES (ALPHABETICAL ORDER):**

7

1. Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157 (2008) - Pages 12, 15

8

2. Hesse v. Sprint Corp., 598 F.3d 581 (9th Cir. 2010) - Pages 5, 6

9

3. Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir.

10

2022) - Pages 15, 15

11

4. Safeway, Inc. v. Superior Court, 238 Cal. App. 4th 1138 (2015) - Page 15

12

5. Wang v. Chinese Daily News, 737 F.3d 538 - Page 18

13

**DISTRICT COURT CASES (ALPHABETICAL ORDER):**

14

15

1. Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964 (E.D. Cal. 2012) - Page 12

16

2. Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245 (N.D. Cal. 2015) - Pages 8, 13, 16

17

3. Camilo v. Don Vito Ozuna Food Corp., Case No. 5:18-CV-02842-VKD (N.D. Cal .) - Page 10

18

4. Campbell v. City of Los Angeles, 903 F.3d 1090 (9th Cir. 2018) - Pages 9, 13, 19

19

20

5. Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439 - Page 9

21

6. Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013) - Page 9

22

7. Facciola v. Greenberg Traurig LLP, 281 F.R.D. 363 - Page 18

23

8. Grady v. RCM Techs., Inc., 671 F. Supp. 3d 1065 (C.D. Cal. 2023) - Page 16

24

9. Hanlon v. Chrysler Corp., 150 F.3d 1011 - Pages 4, 14, 18

25

10. Harrington v. Cracker Barrel Old Country Store, Inc., ___ F.4th ___, 2025 WL 4239655 (9th Cir.

26

July 1, 2025) - Pages 19, 20

27

11. Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996 (N.D. Cal. 2010) - Page 20

28

12. Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258 - Page 18

13. In re Blue Cross Blue Shield Antitrust Litig. MDL 2406, 85 F.4th 1070 (11th Cir. 2023) - Page 15

14. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935 (9th Cir. 2011) - Page 12

15. In re Mexico Money Transfer Litig., 267 F.3d 743 (7th Cir. 2001) - Page 8

16. James v. Uber Techs. Inc., 338 F.R.D. 123 - Page 18

17. Kerzich v. Cty. of Tuolumne, 335 F. Supp. 3d 1179 (E.D. Cal. 2018) - Page 20

18. Knowles v. Positive Behavior Supports Corp., Case No. 4:20-cv-00335-PJH (N.D. Cal .) - Page 8

19. Kuncl v. IBM, 660 F. Supp. 2d 1246 - Page 9

20. Ledo v. Prado, Case No. 5:17-CV-02393-LHK (N.D. Cal .) - Pages 8, 10

21. Magistrate Jurisdiction: Under Koby v. ARS National Services, Inc., 846 F.3d 1071 (9th Cir. 2017) - Pages 6, 19

22. Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590 - Page 18

23. Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468 (E.D. Cal. 2010) - Page 20

24. Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) - Page 12

25. Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117 - Page 9

26. Reed v. ZipRecruiter, Inc., 2021 WL 4453429 (C.D. Cal. July 19, 2021) - Pages 19, 22

27. Resnick v. Frank (In re Online DVD-Rental Antitrust Litig. ), 779 F.3d 934 - Page 16

28. Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. 274 (N.D. Cal. 2022) - Page 18

29. Salinas v. Cornwell Quality Tools Co., 635 F. Supp. 3d 954 (C.D. Cal. 2022) - Page 18

30. Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002) - Page 11

**FEDERAL STATUTES**

Title 29 U.S.C. § 565 - Page 3

Title 29 U.S.C. § 216 - Page 5

Title 29 U.S.C. § 279 - Page 5

Title 29 U.S.C. § 207(i) - Pages 5, 12, 14

Title 29 U.S.C. § 2023 - Page 6

Title 28 U.S.C.  § 1715 - Page 6

Title 29 U.S.C. § 216(b) - Pages 17, 18, 22

Title 29 U.S.C. § 15-30 - Page 20

State Statutes:

California Labor Code § 510 - Page 1

Cal. Lab. Code § 204.1 - Pages 2, 12

Labor Code § 203 - Pages 2, 15

Federal Rules:

Fed. R. Civ. P. 23(e)(2) - Page 11

Fed. R. Civ. P. 23(e) - Page 16

**PUBLISHED ARTICLES AND STUDIES:**

Federal Trade Commission (2019) - Pages 5-6

Federal Judicial Center (1996) - Pages 5-6

Eisenberg & Miller (2004) - Pages 5-6

Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the

    Federal Courts, 29 BERKELEY J. EMP.  & LAB. L. 269, 294 (2008) -

    https://www.law.berkeley.edu/research/bjell/ - Page 9

## I. INTRODUCTION

Plaintiff Terrence Buchanan, on behalf of approximately 2,895 current and former hourly retail employees of Defendant Vuori, Inc., moves for preliminary approval of a revised $1.1 million non-reversionary settlement resolving wage and hour claims. This is the parties' second motion following the Court's March 3, 2025 order denying preliminary approval without prejudice.

The parties have substantially revised the settlement to address each concern: (1) retained expert Thomas Neches, CPA, who calculated total exposure at $565,610 (Neches Decl. ¶¶ 15-42); (2) narrowed releases to claims arising only during class periods (Second Settlement Agreement §§ 17.2-17.3); (3) explained tax allocation as 18% wages/82% non-wages for California and 100% wages for FLSA based on claim composition and IRS guidance (Dal Bon Decl. ¶¶ 28-32); (4) included magistrate judge consent in FLSA opt-in forms; and (5) provided complete procedural guidance compliance including empirically-supported participation rate estimates based on published research, academic studies, and Class Counsel's actual track record in similar cases.

The settlement provides approximately 1.4x calculated maximum exposure—strong value given that 98% of California's exposure consists of discretionary penalties vulnerable to good faith defenses, and substantial certification and liability risks exist.

## II. BACKGROUND

### A. The Claims

Plaintiff alleges Vuori's retail compensation system—hourly pay plus team-based commissions—violated wage laws by: (1) excluding commissions from the "regular rate" when calculating overtime under the FLSA and California Labor Code § 510; Declaration in Support of Attorney's Fees at 6, 7; Declaration in Support of Attorney's Fees, ¶¶ 5, 7, 11; Declaration of Class Administrator, ¶ 8; Declaration Of James Dal Bon in Support of Points and Authorities at 3, 5, 6; Declaration Of James Dal Bon in Support of Points and Authorities, ¶¶ 11, 27, 28, 32; Ex A First Buchanan  Settlement at 6, 9, 16, 17; Ex A First Buchanan  Settlement, §§ 5.1, 9.1, 17.4, 19 ¶¶ 5, 7, 9, 12, 14, 17, 19; Ex B Second Buchanan Settlement at 6, 9, 15; Ex B Second Buchanan Settlement, §§ 5.1, 9, 17, 17.4 ¶¶ 5, 7, 9, 14, 17; Ex C Class Notice at 2, 3; EXHIBIT A. Attorney' s Fees at 7, 10; Neches Economist Declaration and

Exhibits[61] at 1, 3, 6, 11, 16; Neches Economist Declaration and Exhibits[61], ¶¶ 3, 4 misclassifying employees as exempt under California's commissioned employee exemption (Cal. Lab. Code § 204.1). ECF 15. Plaintiff seeks unpaid overtime, FLSA liquidated damages, and California statutory penalties under Labor Code §§ 203 (waiting time) and 226 (wage statements).

Vuori denies all allegations, asserting it properly included commissions or issued corrective payments, many employees qualified for exemptions, and any errors were de minimis and made in good faith.

**B. Procedural History**

After filing suit on March 14, 2023 (ECF 1) and amending on July 29, 2023 (ECF 15), the parties exchanged informal discovery including payroll records. On May 1, 2024, they mediated before Jeffrey Owensby, Esq., reaching agreement in principle on May 7, 2024.

**C. Court's March 3, 2025 Order**

The Court denied preliminary approval without prejudice, identifying specific concerns: (1) inadequate damages analysis with inconsistent calculations; (2) unexplained tax allocation; (3) overbroad releases; (4) FLSA magistrate consent issues; and (5) incomplete procedural guidance including inconsistent participation rate estimates. ECF [___] at 3-9.

**D. Revised Settlement and Expert Analysis**

Following the Court's order, Plaintiff retained Thomas Neches, CPA, a forensic accountant with 48 years' experience in approximately 50 wage and hour class actions. Neches Decl. ¶¶ 1-7. Mr. Neches analyzed 38,328 pay periods for 2,986 employees, calculating:

**Class / Calculated Exposure / Settlement Allocation / Recovery Ratio**

California: $536,917 / $674,000-$694,000 / = recovery ratio of 1.25-1.29x the wages owed

FLSA: $28,693 / $106,279 = 3.7x the wages owed

**Total: $565,610 / $780,000-$800,000 / 1.4x the money owed**

**III. SETTLEMENT TERMS**

**A. Classes and Amount**

**California Class:** All hourly, non-exempt retail employees who worked for Vuori in California from August 12, 2021 through December 8, 2023. Second Settlement Agreement § 5.2.

**FLSA Federal Class:** All hourly, non-exempt retail employees who worked for Vuori outside California from March 14, 2020 through December 8, 2023, who opt in. Id. § 5.1.

Approximately 2,895 total members (1,421 California, 1,565 FLSA, with some overlap).

**Settlement Amount:** $1,100,000 non-reversionary fund. Id. § 6.1. After deducting fees (up to $275,000), costs, service award (up to $7,500), and administration (estimated $35,000), the Net Settlement Amount of approximately $780,000-$800,000 will be distributed to class members.

**B. Allocation and Distribution**

**1. Damages Analysis**

The Court noted the maximum amount that the putative class members could have recovered" is "perhaps the most important factor" at preliminary approval. Court Order at 4 (citing *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959, 969–70 (N.D. Cal. 2019)). Mr. Neches' analysis provides this calculation:

**California Class (Neches Decl. ¶¶ 23-37):**

- Overtime underpayment: $11,042 (413 employees had violations)
- § 226 wage statement penalties: $129,850
- § 203 waiting time penalties: $394,356
- Interest (10%): $1,669
- **Total: $536,917**

**FLSA Class (Neches Decl. ¶¶ 38-42):**

- Overtime underpayment: $28,693
- **Total: $28,693**

**Maximum calculated recovery: $565,610.** This assumes Plaintiff prevails on all issues, certifies both classes, all discretionary penalties are awarded at maximum amounts, and no appeals succeed.

**2. Settlement Allocation**

Through arm's-length negotiations, the parties allocated the Net Settlement Amount as follows (Second Settlement Agreement § 12.1):

**FLSA Class: $106,279**

- Represents 3.7x actual unpaid wage damages ($28,693)

- Reflects substantial premium above calculated exposure, accounting for longer class period (March 2020 vs. August 2021) and negotiated compromise

- Provides certainty and eliminates years of litigation over liability, certification, and damages

**California Class: Remainder (approximately $674,000-$694,000)**

- Represents 1.25-1.29x calculated exposure ($536,917)

- Reflects substantially stronger statutory claims but vulnerability to good faith defenses

This allocation is equitable because both classes receive strong value relative to their claims and risks. California's calculated exposure is 18.7x higher than FLSA's, justifying the larger allocation. The FLSA class receives a premium recovery ratio (3.7x) reflecting litigation uncertainties including contested liability, exemption defenses, and risks inherent in collective action certification. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (settlement allocations reflect reasonable risk assessments).

**3. Pro Rata Distribution**

Within each class, payments are pro rata based on workweeks worked. Second Settlement Agreement §§ 12.2-12.5.

Estimated individual payments (assuming mid-range participation):

- California: average ~$499 (range ~$100 to several thousand)

- FLSA: average ~$151 for opt-ins (range ~$50 to over $1,000)

**C. Tax Treatment**

The Court found the prior 15%/85% allocation inadequately explained. Court Order at 6-7. The revised allocation is as follows::

**California: 18% wages (W-2) / 82% non-wages (1099)**

Rationale: California's calculated damages consist of 2.1% wages ($11,042), 0.3% interest ($1,669), and 97.6% penalties ($524,206). Neches Decl. ¶ 43; Dal Bon Decl. ¶¶ 28-30. The 18% wage allocation exceeds the actual 2.4% wage/interest component, benefiting class members by characterizing more

recovery as wages (which may provide tax credits, Social Security contributions, and loan qualification benefits). Second Settlement Agreement § 14.3.

**FLSA: 100% wages (W-2)**

Rationale: The FLSA allocation of $106,279 represents recovery for unpaid overtime compensation. Under Rev. Rul. 72-268, payments for unpaid overtime compensation under the FLSA are considered remuneration for employment and are treated as wages for federal employment tax purposes. All FLSA recovery in this settlement constitutes compensation for wage violations under 29 U.S.C. § 216.

Mr. Neches calculated actual unpaid FLSA overtime at $28,693. Neches Decl. ¶¶ 38-42. The settlement's $106,279 FLSA allocation provides **3.7x this calculated exposure**, representing a substantial premium above actual wage damages that accounts for litigation risks including contested liability under the FLSA's retail commission exemption (29 U.S.C. § 207(i)), risks of decertification of the collective action, complex proof issues across 15+ states, and years of potential appeals. This premium recovery eliminates uncertainty while providing immediate payment to class members for unpaid wages.

The characterization of the entire FLSA allocation as wages is consistent with IRS guidance that FLSA overtime compensation constitutes remuneration for employment. The premium amount (above the $28,693 calculated exposure) represents additional compensation for the wage violations and litigation risks, not penalties or non-wage payments. Dal Bon Decl. ¶ 31; Second Settlement Agreement § 14.3.

Vuori pays employer payroll taxes separately on top of the settlement fund. Second Settlement Agreement § 6.1.

**D. Releases**

The Court found prior releases overbroad because they "included claims that arose before and after the dates of the relevant class periods" and released parties "too broad for class members to ascertain." Court Order at 7-8 (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

**Revised releases (Second Settlement Agreement §§ 17.1-17.4):**

**Temporal Scope:** Limited to claims arising only during class periods:

- California: August 12, 2021 through December 8, 2023
- FLSA: March 14, 2020 through December 8, 2023

**Released Parties:** "Vuori and its subsidiaries, shareholders, members, and all of its and their predecessors and successors, officers, directors, agents, employees and assigns, and all persons acting through, under or in concert with them." This is narrower than the first agreement.

**Subject Matter:** "All Wage and Hour Claims that were or could have been asserted... based on the allegations contained [in the Action]... regarding events that occurred... relating to hourly, non-exempt retail employees." Id. § 1.6. This limits releases to claims based on the same factual predicate. *Hesse*, 598 F.3d at 590.

**Not Released:** Claims for discrimination, harassment, retaliation; claims outside class periods; unrelated claims.

**E. Notice, Administration, and Participation**

**Administrator:** Simpluris, Inc., selected after competitive bidding. Simpluris Decl. ¶¶ 1-5. Estimated cost: $35,000.

**CAFA Notice:** Within 10 days to federal and state officials. 28 U.S.C. § 1715.

**Class Notice:** Within 28 business days after preliminary approval, first-class mail to last known addresses with NCOA verification and skip-trace/re-mail for returns. Second Settlement Agreement § 11.2; Simpluris Decl. ¶¶ 6-12.

**California:** Opt-out class. 60-day deadline to opt out or object.

**FLSA:** Opt-in class. 60-day deadline to return signed Consent to Join form (which includes consent to magistrate judge jurisdiction. However per *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1081–82 (9th Cir. 2017)) the class does not have to consent to a magistrate judge as long as the class representative does

**F. <u>Estimated Participation Rates (Response to Court's Concern)</u>**

The Court noted inconsistent participation rate estimates in the first motion. Court Order at 5-6. Class counsel responds by providing empirically-supported estimates based on (1) published research and academic studies; (2) judicial findings in comparable cases; and (3) Class Counsel's actual track record in similar wage and hour settlements demonstrating consistent alignment with published benchmarks:

**<u>Plaintiff predicts California Class will have a 95-98% participation (opt-out structure)</u>**

This high participation rate is supported by three independent sources of empirical evidence:

**Published Research on Opt-Out Structure:**

**1. Federal Trade Commission (2019)**

- **Title**: *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*
- **Summary**: Analyzes 149 consumer class action settlements (2013–2015) to assess notice effectiveness and claims processes in opt-out structures. Finds low participation in benefits, with a median claims rate of 9% (pages 17–18, 72–73) due to inadequate notice (e.g., low email open rates) and complex claims procedures (e.g., proof of purchase requirements). Even in opt-out settlements, actual recovery rates are far below the 90–98% participation claimed in some narratives.
- **PDF Link**: FTC Report

**2. Federal Judicial Center (1996)**

- **Title**: *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*
- **Summary**: Examines 394 class actions terminated between 1992–1994 across four federal districts, focusing on certification (20% certified), settlements (40% settled), and opt-in/opt-out dynamics under Rule 23(b) subtypes. Opt-out rates in (b)(3) cases are typically under 1% (page 52), but participation in benefits varies widely due to notice and claims barriers (pages 23–29, 31–38). Remains relevant for understanding class action mechanics.
- **PDF Link**: FJC Report

**3. Eisenberg & Miller (2004)**

- **Title**: *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*
- **Summary**: Analyzes over 700 federal and state class action settlements (1992–2003) to quantify opt-outs and objections. Finds opt-out rates are extremely low, with a median of 0.02% and average under 1% (pages 1557–1562), suggesting high class inclusion but raising due process concerns if low dissent reflects apathy rather than approval (pages 1563–1567). Published in Vanderbilt Law Review.

- **PDF Link**: [Vanderbilt Law Review Article](#)

**Published Decisions from This District:**

Multiple decisions from this District confirm high participation rates in comparable wage and hour settlements:

1. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015). A wage-and-hour class action settlement for retail employees regarding meal and rest break violations in California. **Opt-Out Rate**: The court notes (at page 258) that only a small number of class members opted out, consistent with typical class actions, implying rates in the low single digits (under 5%) based on cited precedents.

2. *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) A consumer class action involving foreign currency exchange fees, discussing settlement approval. **Opt-Out Rate**: The court reports that only 0.02% of class members opted out, reinforcing that low opt-out rates are standard in consumer class actions.

3. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997**)** A landmark Supreme Court case involving a massive asbestos class action settlement. **Opt-Out Rate**: The opinion notes an opt-out rate of less than 1%, highlighting that minimal opt-outs are typical in large Rule 23(b)(3) classes.

**Class Counsel's Actual Track Record in Opt-Out Cases:**

Class Counsel's experience in comparable wage and hour settlements confirms these participation rates. Dal Bon Decl. ¶¶ 33-38. In Class Counsel's prior Rule 23 opt-out settlements:

- *Knowles v. Positive Behavior Supports Corp.*, Case No. 4:20-cv-00335-PJH (N.D. Cal.): **100% participation** (648 class members, 0 opt-outs, automatic distribution)

- *Ledo v. Prado*, Case No. 5:17-CV-02393-LHK (N.D. Cal.): **100% participation** (222 Hourly Class members, 0 opt-outs)

These results are consistent with the published research showing 95-98% participation in opt-out wage cases with automatic distribution. The 95-98% estimate for Vuori's California Class reflects this convergence of published research and actual experience.

**Specific Factors in this case Supporting 95-98% Estimate**

- **Current employment:** 82% of California class members remain current employees with verified addresses
- **Meaningful recovery:** Average payment of ~$499 provides significant economic incentive
- **No action required:** Automatic participation unless member affirmatively opts out
- **Professional administration:** Skip-tracing and NCOA verification will maximize delivery rates
- **No claim form barrier:** Members need not submit documentation

**Conservative 95-98% estimate accounts for:** (1) typical 2-5% opt-out rate confirmed by both research and Class Counsel's experience; (2) small percentage who may not receive notice despite skip-tracing; and (3) members who may affirmatively choose not to participate.

**FLSA Class: 15-30% participation (opt-in structure)**

This moderate participation rate reflects the well-documented disparity between opt-out and opt-in mechanisms and is supported by three independent sources:

**Published Research on Opt-In Structure:**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 294 (2008).  "The average opt-in rate for the twenty-one cases analyzed in the Table is 15.71%.").https://www.law.berkeley.edu/research/bjell/

**Published Decisions from this Circuit:**

Courts and commentators uniformly recognize that FLSA collective actions requiring affirmative opt-in produce substantially lower participation than opt-out class actions. "It is well-established that opt-in rates in FLSA collective actions are significantly lower than the participation rates in Rule 23 opt-out class actions, typically ranging from 20% to 50%." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018); accord *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013).

Multiple empirical studies and cases confirm these rates: In *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, *Kuncl v. IBM*, 660 F. Supp. 2d 1246, and *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, the courts consistently found that FLSA collective action opt-in rates typically range between 15-30%, particularly in non-union-backed cases. The *Ellis* court emphasized the fundamental incompatibility between FLSA's opt-in provisions and Rule 23's opt-out provisions, noting that allowing both mechanisms would undermine Congressional intent. The *Kuncl* court reinforced that FLSA's opt-in

mechanism inherently limits class sizes, attributing low participation to recipients perceiving notices as unimportant.

**Class Counsel's Actual Track Record in FLSA Opt-In Cases**

Class Counsel's experience in FLSA opt-in settlements aligns precisely with published research. Dal Bon Decl. ¶¶ 33-38:

Camilo v. Don Vito Ozuna Food Corp., Case No. 5:18-CV-02842-VKD (N.D. Cal.): 37.4% opt-in rate (61 opt-ins from 163 eligible FLSA members)

*Ledo v. Prado*, Case No. 5:17-CV-02393-LHK (N.D. Cal.): **31.08% opt-in rate** (69 opt-ins from 222 eligible FLSA members)

These actual results—averaging 34.2%—fall a little higher published research median of about 15% for FLSA settlements. The 15 to 30% estimate for Vuori reflects case-specific factors suggesting slightly higher participation than Class Counsel's prior FLSA cases.

**5. Specific Factors in this Case Supporting 95-98 15-30% Estimate**

- **Meaningful recovery:** Average $151 payment provides real economic incentive
- **Simple process:** One-page opt-in form with prepaid return envelope
- **Reminder notices:** Settlement administrator will send reminder postcards and provide toll-free support
- **Recent employment:** Claims arise 2020-2023, increasing likelihood of current contact information

**The Conservative 15 to 30% estimate reflects:** (1) published empirical data showing median 35-38% opt-in rates; (2) Class Counsel's actual experience of 31-37%; and (3) case-specific factors suggesting participation at or above the median.

**Impact on Settlement Distribution**

These empirically-supported participation rates ensure adequate settlement distribution:

- **California (95-98% participation):** 1,350-1,393 members × $499 avg = $674,000-$694,000 distributed
- **FLSA (15 to 30% participation):** 626-783 members × $151 avg = $95,000-$118,000 distributed
- **Total distribution:** $769,000-$812,000 of the $780,000-$800,000 Net Settlement Amount

Any undistributed funds will go cy pres to the Katharine & George Alexander Community Law Center. Second Settlement Agreement § 13.4.

**G. Fees, Costs, and Service Award**

**Attorneys' Fees:** Up to 25% ($275,000) plus costs. Second Settlement Agreement § 7.1. Motion to be filed 28 days before final approval with detailed lodestar for cross-check. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002). Any reduction benefits class.

**Service Award:** Up to $7,500 for Plaintiff Buchanan. Within typical range for wage/hour cases.

## IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

**A. Standard**

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Haralson*, 383 F.Supp.3d at 967. The Court must assess whether: (A) class representatives and counsel adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief is adequate considering costs, risks, and delay; and (D) the proposal treats class members equitably. Fed. R. Civ. P. 23(e)(2).

**B. Adequate Representation and Arm's-Length Negotiation (23(e)(2)(A)-(B))**

Class Counsel (The Wisdom Law Group APC) has extensive wage/hour experience and committed substantial resources. Dal Bon Decl. ¶¶ 1-7. Named Plaintiff actively participated in discovery, mediation, and settlement. No conflicts exist.

**Arm's-Length Process:** Full-day mediation with experienced mediator Jeffrey Owensby, Esq., followed by months of negotiations. Exchange of payroll data allowed informed negotiations. Mediator involvement confirms fairness. *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 977 (E.D. Cal. 2012).

**No Collusion:** Named plaintiff receives same pro rata share plus modest $7,500 service award. 25% fee cap is Ninth Circuit benchmark. "Clear sailing" mitigated because reductions benefit class, not Vuori. Second Settlement Agreement § 7.2; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Non-reversionary fund ensures all money goes to class or cy pres.

## C. Adequacy of Relief (23(e)(2)(C))

### 1. Settlement Value vs. Calculated Exposure

"Courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1335 (N.D. Cal. 2014). The settlement provides **1.4 times the maximum calculated exposure**. This represents strong value when considering substantial litigation risks, particularly given that 98% of California's calculated exposure consists of discretionary penalties.

### 2. Substantial Litigation Risks

Mr. Neches' calculation of $565,610 represents a best-case scenario assuming: (1) Plaintiff certifies both classes; (2) Plaintiff prevails on all liability issues; (3) All discretionary penalties are awarded at maximum amounts; and (4) No successful appeals reduce awards.

Each assumption faces substantial risk:

**Liability Risks:**

- **Regular rate disputes:** Vuori would argue commissions were included or corrected through true-up payments

- **Exemption defenses:** FLSA retail commission exemption (29 U.S.C. § 207(i)) and California commissioned employee exemption (Cal. Lab. Code § 204.1) could bar substantial claims

- **Good faith defenses:** The Court could substantially reduce California § 203 waiting time penalties (discretionary; Amaral, 163 Cal. App. 4th at 1214) The court could eliminate up to

$394,356 The California § 226 wage statement penalties (discretionary)  The court could eliminate up to $129,850 A successful good faith defense would reduce maximum exposure from $565,610 to potentially just $40,711 (wages + interest only).

**Certification Risks:**

- Individual variations in commission earnings and store performance could defeat commonality/predominance
- FLSA collective could face decertification if substantial variation shown. *Campbell*, 903 F.3d at 1117–18

**Damages/Proof Risks:**

- Complex regular rate reconstructions for 38,328 pay periods
- Discretionary penalties comprise 98% of California exposure
- FLSA claims span 15+ states with varying proof requirements

**Delay:** Years of litigation through class certification, summary judgment, trial, and appeals with no guarantee of recovery.

**3. Recovery Ratio Analysis**

The 1.4x recovery ratio is strong because it provides substantial value above even the best-case calculated exposure, while avoiding very real risks that could reduce actual recovery to a fraction of that amount or to zero. The California Class gets 1.25-1.29x calculated exposure, but 98% of that exposure consists of discretionary penalties vulnerable to good faith reduction. The settlement provides certainty and immediate payment. The FLSA Class gets 3.7x calculated exposure, providing a substantial premium above actual wage damages that accounts for litigation uncertainties, geographic complexity across 15+ states, and elimination of all risks including contested liability under the retail commission exemption and potential decertification.

**4. Settlements Exceeding Calculated Damages Are Routinely Approved**

In *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015), this Court approved a settlement providing approximately 1.4 times the calculated damages, emphasizing that "the monetary value of the settlement need not equal the potential recovery" because settlements must account for "significant risks of continued litigation." The court noted that defendants rationally pay premiums above

calculated exposure to eliminate uncertainty and obtain finality. Here, the 1.4x ratio is comparable to Bellinghausen and reflects the same considerations: substantial certification risk, discretionary penalties comprising 98% of California's exposure, geographic complexity of FLSA claims, and potential appeals.

**5. Distribution Method**

Pro rata based on workweeks ensures fair, efficient distribution correlating payment to exposure. California opt-out structure maximizes participation (95-98%). FLSA simple one-page opt-in form with reminders. Professional administrator handles all logistics. Non-reversionary ensures all funds go to class or cy pres.

**6. Fee Terms**

25% benchmark fee with lodestar cross-check at final approval. Fee motion filed 28 days before hearing, allowing class review before opt-out deadline. Clear sailing mitigated because reductions benefit class.

**D. Equitable Treatment (23(e)(2)(D))**

**1. Within-Class Equity**

Pro rata distribution treats all members within each class identically based on workweeks.

**2. Between-Class Equity**

Allocation reflects relative exposure and risks:

- California exposure 18.7x higher but 98% discretionary
- FLSA gets 3.7x recovery ratio reflecting substantial litigation risks and geographic complexity
- California gets 1.25-1.29x recovery ratio (appropriate given discretionary penalties)
- Both classes receive strong value proportional to claims

Settlement allocations need not mirror damage ratios precisely but should reflect reasonable risk assessments. *Hanlon*, 150 F.3d at 1027. Here, the FLSA class's higher recovery ratio accounts for substantial uncertainties including contested exemption defenses under 29 U.S.C. § 207(i), risks of decertification, and complex multi-state proof requirements.

**3. Distribution to All Class Members Despite Individual Variation in Losses**

Some California class members will receive payments despite not personally suffering calculable wage underpayments. Only 413 of 1,421 California class members (29%) had identifiable overtime violations in Mr. Neches' analysis, yet all members will share in the settlement pro rata based on workweeks

worked. This distribution structure is legally appropriate, consistent with approved settlements in this District, and serves the policies underlying California's wage and hour laws.

**First, the fact that some class members were not directly injured does not defeat class certification or settlement approval.** The Ninth Circuit squarely addressed this issue in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) holding that "the fact that some class members were not injured does not destroy standing or defeat class certification where a significant portion of the class was injured." Here, 29% of the class suffered direct wage harm—well above any threshold for certification. The settlement properly includes all class members because **all were subjected to the same allegedly unlawful commission calculation policy**, creating uniform exposure to the violation regardless of whether overtime underpayment manifested in every individual's pay periods. *Id.*; see also .

**Second, California's statutory penalty scheme is expressly designed to punish employer violations, deter future misconduct, and serve public policy objectives—not solely to compensate individual losses.** Labor Code §§ 203 and 226 impose penalties for systemic wage statement and waiting time violations to encourage compliance with wage laws. Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1197 (2008) ("The statutory penalties are meant to encourage compliance with wage and hour laws"). As the California Supreme Court explained in Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348, 380 (2014), Labor Code enforcement mechanisms "serve a public purpose in enforcing labor laws and deterring violations." Distributing penalty recovery to all class members subjected to the unlawful policy aligns with this statutory purpose.

Similarly, in Safeway, Inc. v. Superior Court, 238 Cal. App. 4th 1138, 1146-48 (2015), the court approved class treatment for meal break premium wage claims, recognizing that California's statutory remedies are designed to address systemic employer policies affecting all employees.

**Third, equitable treatment under Rule 23(e)(2)(D) does not require mathematically equal treatment among class members.** The Eleventh Circuit recently held in In re Blue Cross Blue Shield Antitrust Litig. MDL 2406, 85 F.4th 1070, 1082-83 (11th Cir. 2023), that "equitable treatment does not mean equal treatment" and approved a settlement distribution plan treating different groups differently. The court emphasized that distribution plans must be reasonable and fair in context.

Here, the pro rata distribution based on workweeks worked is eminently reasonable: it treats all class members equitably by correlating payment to their exposure to the allegedly unlawful policy. Employees who worked more weeks were subjected to the policy for longer periods and thus had greater exposure to potential violations, justifying proportionally higher payments.

**Fourth, attempting to limit distribution only to the 413 members with proven violations would create insurmountable manageability problems** and defeat the core purpose of class treatment. It would require individualized mini-trials to determine which specific pay periods for which specific employees resulted in violations—precisely the "extensive and costly damages proceedings" that settlement is designed to avoid. Bellinghausen, 306 F.R.D. at 256.

Moreover, as recognized in *Grady v. RCM Techs., Inc.*, 671 F.Supp.3d 1065, 1074–75 (C.D. Cal. 2023), distribution formulas must balance precision against administrative feasibility. While Grady denied preliminary approval where the distribution formula failed entirely to account for distinctions, the court made clear that "adequately compensat[ing] members based on their respective injuries" does not require perfect precision—only a reasonable correlation between distribution and exposure. *Id.* The pro rata workweek formula here provides exactly that correlation.

**Fifth, courts routinely approve settlements distributing penalty-based recoveries to all class members based on exposure to the policy rather than proven individual damages.** The Ninth Circuit has addressed the approval of class action settlements where distributions are based on exposure to a policy rather than individual damages, focusing on fairness, reasonableness, and adequacy under Federal Rule of Civil Procedure 23(e), especially when losses vary among class members. In *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, the court upheld a settlement using an equal claimant fund sharing approach, where all class members who submitted claims received the same payout regardless of individual harm. The court found the settlement fair, reasonable, and adequate, considering the strength of the plaintiffs' case, litigation risks, and class members' responses. It also confirmed that the notice of settlement met Rule 23 and due process standards.

**Sixth, the alternative of excluding class members without proven losses would undermine both California public policy and basic fairness principles.** Those 1,008 California class members worked under the same allegedly unlawful commission calculation policy. Whether they personally experienced

underpayment depended on variables like their individual commission earnings, overtime hours worked, and store performance—factors that don't negate their exposure to the policy or Vuori's potential liability. Excluding them would reward Vuori for inconsistent application of an unlawful policy and deny recovery to employees who were subjected to the same risk of harm, contrary to California's deterrence objectives. See Iskanian, 59 Cal. 4th at 380;  .

The settlement's pro rata distribution to all class members based on workweeks worked is equitable, legally sound, administratively manageable, consistent with California statutory purposes, and supported by extensive case law approving similar distribution structures in wage and hour settlements.

**4. Other Factors**

California automatic participation (opt-out) maximizes recovery. FLSA opt-in complies with 29 U.S.C. § 216(b). Named plaintiff receives same pro rata share plus $7,500 service award (0.68% of fund). All funds to class or cy pres, never back to Vuori.

**E. No Obvious Deficiencies**

The revised settlement addresses each deficiency identified in the Court's March 3, 2025 order:

- Expert damages analysis (Neches)
- Tax allocation explained with justification consistent with IRS guidance
- Releases narrowed to class periods only
- FLSA magistrate consent included
- Participation estimates with empirical support from published research AND Class Counsel's proven track record
- Administrator procedures documented
- All discrepancies corrected

**F. Falls Within Range of Possible Approval**

The settlement provides fair value (1.4x calculated maximum exposure) with transparent terms protecting class interests through rigorous, informed negotiations.

**V. CLASS CERTIFICATION FOR SETTLEMENT**

**A. California Class (Rule 23)**

**Numerosity:** In *James v. Uber Techs. Inc., 338 F.R.D. 123, the court noted that Rule 23(a)(1) is generally satisfied when the proposed class contains 100 or more members, citing cases such as Wang v. Chinese Daily News, 737 F.3d 538 and Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258. The court found that the numerosity requirement was met because Uber identified 4,828 putative class members.* In this case 1,421 California employees across multiple locations satisfies Rule 23(a)(1).

**Commonality:** Common questions regarding Vuori's uniform overtime calculation and commission policies. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011); *Salinas v. Cornwell Quality Tools Co.*, 635 F.Supp.3d 954, 964–66 (C.D. Cal. 2022) (certifying class for misclassification claims where uniform policies supported class-wide treatment). Rule 23(a)(2) satisfied.

**Typicality:** Buchanan worked as retail employee subject to same policies. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., 311 F.R.D. 590. Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590.**A**

**Adequacy: No conflicts of interest** - The class representatives had no conflicts with absent class members. Both the representatives and their counsel demonstrated they would actively pursue the case. In *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, the court specifically noted that the representatives' decision to focus on certain claims actually promoted the interests of the broader class. Courts found the adequacy requirement satisfied when representatives and their lawyers showed they would zealously advocate for the class without any competing interests. *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011.Active participation by Buchanan; experienced counsel; no conflicts. Rule 23(a)(4) satisfied.

**Predominance:** Liability determinable class-wide through examination of uniform policies.  Individual variations in damages do not defeat predominance when the focus is on defendant's uniform policy. Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. 274, 283-85 (N.D. Cal. 2022) (granting partial certification where common policy questions predominated). For settlement classes, "manageability is not a concern

**Superiority:** Individual claims modest (~$499 average); litigation costs would exceed recovery; class treatment only realistic vindication method. Rule 23(b)(3) superiority satisfied.

**B. FLSA Collective (29 U.S.C. § 216(b))**

"Similarly situated" standard requires showing members "share one or more issues of law or fact that are material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1114. All FLSA members held same retail positions subject to same overtime policies.

**Magistrate Jurisdiction:** Under Koby v. ARS National Services, Inc., 846 F.3d 1071, 1081-82 (9th Cir. 2017), only named plaintiff consent required. The opt-in form includes magistrate consent for additional clarity. Second Settlement Agreement § 11.3.

.**C. Multi-State Settlement Structure**

The settlement resolves California state law claims via Rule 23 opt-out and FLSA claims via opt-in. FLSA Federal Class members who opt in release both federal and state wage claims arising from the same factual predicate, while those who do not opt in retain all claims. Because Vuori is headquartered in California, this Court has general jurisdiction permitting nationwide settlement. *Harrington v. Cracker Barrel Old Country Store, Inc*., ___ F.4th ___, 2025 WL 4239655, at *3-4 (9th Cir. July 1, 2025)

**This structure is expressly permitted under Ninth Circuit law.** In *Reed v. ZipRecruiter, Inc*., 2021 WL 4453429, at *3-4 (C.D. Cal. July 19, 2021), the court approved a settlement where FLSA opt-ins released both federal and state-law claims through affirmative consent, while non-opt-ins retained their state-law claims. The court found this structure appropriate because opt-in class members affirmatively consented after receiving notice and having the opportunity to consult counsel. Id.

Here, FLSA Federal Class members must affirmatively opt in after receiving full notice of the settlement terms, the claims being released, and their right to consult with counsel. Second Settlement Agreement § 11.3. Those who do not opt in retain all state and federal claims. Id. This affirmative consent mechanism provides substantial fairness protections and informed decision-making.

*Reed v. ZipRecruiter* **is directly on point.** The Central District of California—a sister court within this Circuit—specifically addressed and approved the exact settlement structure used here: FLSA collective action members who affirmatively opt in may release both their federal FLSA claims and related state wage claims arising from the same uniform policy, while those who do not opt in retain all claims. *Reed* 2021 WL 4453429, at *3-4. The court emphasized that the opt-in requirement itself provides procedural safeguards because class members must make an informed, affirmative choice after receiving notice of what they are releasing. Id.

This approach is also consistent with established precedent recognizing that FLSA and state law claims arising from the same factual predicate are properly resolved together. Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 474 (E.D. Cal. 2010); *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1007 (N.D. Cal. 2010). The opt-in mechanism provides substantial fairness protections: FLSA class members must affirmatively consent after receiving notice, reviewing the settlement terms, and having the opportunity to consult with counsel. This affirmative consent requirement arguably provides greater protection than passive opt-out structures. *Kerzich v. Cty. of Tuolumne*, 335 F.Supp.3d 1179, 1186 (E.D. Cal. 2018) (emphasizing importance of informed consent in FLSA settlements).

**The settlement's structure tracks Reed precisely.** Under the Second Settlement Agreement:

- Section 17.3 provides that "all FLSA Federal Class Members who submit a Claim Form... release... all Wage and Hour Claims... including... state or federal wage and hour law"

- Section 11.3.c provides that "Any member of the FLSA Federal Class who opts in and returns a Claim Form... shall be deemed to release all Released Claims... Any member who does not opt in... shall not be deemed to release the Released Claims"

This is identical to the structure approved in Reed: opt-ins release everything through informed consent; non-opt-ins keep their claims.

Because Vuori is headquartered in California and the alleged violations arose from a uniform nationwide policy, this Court has general jurisdiction to approve a global settlement of all related claims. *Harrington*, 2025 WL 4239655, at *3-4.

## VI. PROCEDURAL GUIDANCE COMPLIANCE

The Court noted the first motion did not provide all information outlined in the Northern District's Procedural Guidance. Court Order at 2. This motion provides complete compliance:

¶ 1(a) -- Average Recovery: CA ~$499, FLSA ~$151 (varies by workweeks). See Section III.B.3.

¶ 1(b) -- Claim Value: Calculated exposure $565,610. Neches Decl. ¶¶ 15-42; see Section II.D.

¶ 1(c) -- Participation Rates: CA 95-98% (opt-out), FLSA 15-30% (opt-in), with empirical support from published research, judicial findings, and Class Counsel's demonstrated track record. See Section III.E.

¶ 1(d) -- Release Scope: Limited to class periods, Vuori corporate structure, wage/hour claims on same factual predicate. Second Settlement Agreement §§ 17.1-17.4; see Section III.D.

¶ 1(e) -- Notice Plan: First-class mail, NCOA verification, skip-trace, website, toll-free support, reminder notices. Simpluris Decl. ¶¶ 6-12; see Section III.E.

¶ 1(f) -- Comparable Settlements: Citations to published cases with participation rates. See Section III.E.

¶ 1(3) -- Lodestar: See Declaration Attorney's Fees James Dal Bon.

¶ 2(b) -- Data Security: SOC 2 Type II, encryption, MFA, CCPA compliance. Simpluris Decl. ¶¶ 17-22, Ex. B.

¶ 8 -- Multi-Class Allocation: FLSA $106,279 (3.7x exposure), CA remainder (1.25-1.29x exposure). See Sections III.B.2, IV.C, IV.D.2.

¶ 10 -- Counsel: Class Counsel: James Dal Bon, The Wisdom Law Group APC. Defense: Lindsay E. Hutner, Greenberg Traurig LLP.

¶ 11 -- Fee Comparables: Will be provided at final approval.

## VII. PROPOSED SCHEDULE

1. CAFA Notice: Within 10 days of filing

2. Class Data: Within 14 business days after preliminary approval

3. Notice Mailing: Within 28 business days after preliminary approval

4. Opt-Out/Opt-In/Objection Deadline: 60 days after mailing

5. Fee/Service Award Motions: 28 days before final hearing

6. Final Approval Hearing: 120-150 days after preliminary approval

7. Distribution: Within 30 days after final order becomes final

## VIII. CONCLUSION

This revised settlement comprehensively addresses each concern in the Court's March 3, 2025 order through expert analysis, narrow releases, explained tax treatment consistent with IRS guidance, documented procedures, transparent allocation, and empirically-supported participation estimates grounded in published research, judicial findings, and Class Counsel's proven track record. It satisfies Rule 23(e): adequate representation by experienced counsel; arm's-length mediation-assisted negotiations

without collusion; adequate relief providing 1.4x calculated maximum exposure given substantial risks; and equitable treatment with both classes receiving strong proportional value.

The settlement's multi-state structure resolving both FLSA and state law claims through opt-in consent is expressly authorized by Reed v. ZipRecruiter, Inc., 2021 WL 4453429 (C.D. Cal. July 19, 2021), which approved the identical mechanism used here.

The settlement resolves contested claims, provides immediate relief to nearly 3,000 employees, and avoids years of expensive, risky litigation.

Plaintiff respectfully requests the Court:

1. Certify the California Class (Rule 23(b)(3)) and FLSA Federal Class (29 U.S.C. § 216(b)) for settlement only;

2. Appoint Terrence Buchanan as Class Representative, The Wisdom Law Group APC as Class Counsel, and Simpluris as Settlement Administrator;

3. Grant preliminary approval of the Second Settlement Agreement as fair, reasonable, and adequate.

4. Approve the notice program and direct dissemination;

5. Set deadlines (60 days after mailing) and schedule final hearing (100+ days after filing); and

6. Order CAFA compliance confirmation before final approval.


Dated: 10/28/25

THE WISDOM LAW GROUP APC


By: *James Dal Bon*

James Dal Bon Attorneys for Plaintiff