James Dal Bon (SBN CA 157942)

THE WISDOM LAW GROUP APC
1625 The Alameda #207
San Jose, CA  95126
Telephone: 408.915.3700
jdb@wagedefenders.net

Attorney for Plaintiff

TERRENCE BUCHANAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE BUCHANAN, an individual, on behalf of himself, and on behalf of Putative Plaintiffs consisting of all persons similarly situated,<br><br>    Plaintiff,<br><br>         v.<br><br>VUORI, INC., a Delaware Corporation; and DOES 1 through 100,<br><br>    Defendant. | CASE NO. 5:23-CV-1121-NC<br><br>**EXHIBIT COVERSHEET   B   MISQUOTES** |

1

| Court's Concerns | Case States | Analysis |
|---|---|---|
| 9:19–22, "*The Court noted the maximum amount that the putative class members could have recovered" is "perhaps the most important factor" at preliminary approval. Court Order at 4 (citing Haralson v. U.S. Aviation Servs. Corp., 383 F.Supp.3d 959, 969–70 (N.D. Cal. 2019)* | "Balancing the class's potential recovery against the amount offered in settlement is "perhaps the most important factor to consider" in preliminary approval, Haralson v. U.S. Aviation Servs. Corp., 383 F.Supp.3d 959, 969–70 (N.D. Cal. 2019 | *Analysis: the case is spot on. However, the brief states that the court noted something at court order number four without stating which court and which order. This* Denying Preliminary Approval 5:23-cv-01121-NC EFC57 at p2-3 mentions Haralson but not in this context. It would have been better and clearer to simply summarize Haralson |
| 13 : 25-28<br>"3. Eisenberg & Miller (2004)<br>• Title: The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues<br><br>• Summary: Analyzes **over 700 federal** and state class action settlements (1992–2003) to quantify opt-outs and objections. Finds opt-out rates are extremely low, with **a median of 0.02%** and average under 1% (pages 1557–1562), suggesting high class inclusion but raising due process<br>concerns if low dissent reflects apathy rather than approval (pages 1563–1567). Published in<br>Vanderbilt Law Review."<br>."<br>." | p.1532 "**The present study is the first systematic attempt to measure the importance of opt-out rights and objections, as well as to assess the determinants of when class members are likely to utilize them. We examined several thousand class action decisions for the eleven-year period between 1993 and 2003 to collect data on the frequency of opt-outs and objections.**<br><br>**Page 1557–1562:**<br><br>"Opt-outs from class participation and objections to class action resolutions are rare: on average, **less than 1** | I remember spot checking this. I missed that the study analyze several thousand and not 700 class section cases in my summary. Andthe time span was off by one year 1993 to 2003 not 1992 to 2003. However, the rest of the summary was accurate. Additionally, it strengthened the argument since the study included more cases. I am not saying this is an excuse for sloppiness. However, it was not an intentional act of deception next one. |

|  | **percent of class members opt-out and about 1 percent of class members object to class-wide settlements**." |  |
|---|---|---|
|  | "The median percentage of class members opting out, in the 143 cases in which the opinion reveals both the number of opt-outs and the number of class members, is a mere 0.1 percent.  The median percentage of class members objecting is zero in the 205 cases with the necessary data.  Opt-out and objector percentages are thus trivial." |  |
|  | "The overall impression across the range of cases in the study is that opt-outs and objections are extremely uncommon." |  |
|  | **Page 1563–1567:** |  |
|  | "The overwhelming inaction displayed by class members in the reported cases suggests that a class member's failure to opt out should not readily be equated to an affirmative consent to jurisdiction.  **Common sense indicates that apathy, not decision, is the basis for inaction**." |  |

| | | |
|---|---|---|
| | "**Class members appear to be behaving out of apathy** or rational ignorance rather than making a considered choice not to opt out or object." | |
| P 15 Page 15, Lines 4–7 • *No action required: Automatic participation unless member affirmatively opts out*<br>• *Professional administration: Skip-tracing and NCOA verification will maximize delivery rates*<br>• *No claim form barrier: Members need not submit documentation*<br>*Conservative 95-98% estimate accounts for: (1) typical 2-5% opt-out rate confirmed by both* | No quote | This does not seem to be a misquote. Perhaps the analysis should've been clearer. |
| **Page 15, Lines 15–17; Lines 17–19**<br><br>*Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the*<br><br>*Federal Courts, 29 BERKELEY J. EMP. & LAB. L. 269, 294 (2008). "The average opt-in rate for thetwenty-one cases analyzed in the Table is 15.71%.").https://www.law.berkeley.edu/research/bjell*collective actions are significantly lower than the participation rates in Rule 23 opt-out class actions, typically ranging from 20% to 50%." Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018); accord Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 774 (7th Cir. 2013). | This quote seems accurate | The quote to the Berkeley Law journal is accurate. |
| Courts and commentators uniformly recognize that FLSA collective actions requiring affirmative opt-in produce substantially lower participation than opt-out class actions. "It is well-established that opt-in rates in FLSA collective actions are significantly lower than the participation rates in Rule 23 opt-out class actions, typically ranging from 20% to 50%." Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018); accord Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 774 (7th Cir. 2013). | The quote to these cases is not accurate | The quote to these cases was not accurate<br>A better cite would have been to: ***The Latest Trends in Preventing and Defending Class and Collective Actions***<br>*Kathleen McLeod Caminiti, Esq.1 Co-Chair, FP Wage & Hour* |

| | | |
|---|---|---|
| | | *Practice Group. +From a litigation perspective, the dichotomy between opt-in FLSA collective actions and optoutRule 23 class actions is significant. Generally, experience indicates that only 8-20% of potentialclaimants will join the lawsuit (i.e., "opt in") in response to notice. Conversely, less than 5% of class members opt-out of a Rule 23 class, meaning that the class action covers most, if not all, class members. February 26-28, 2020 White Paper* Then I should've called those council to find the source of their statistics. Then use the statistics in the research papers. I quoted to compare statistics that gave opt in rates to those that gave opt out rates. Additionally, use of the Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, Kuncl v. IBM, 660 F. Supp. 2d 1246, and Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, cases quoted below would have nobeen useful. |
| **Page 15, Lines 25–27**<br>In Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, Kuncl v. IBM, 660 F. Supp. 2d 1246, and Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, the courts consistently | *"Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with* | This does not appear to be a misquote with the exception of the reference to non union |

| | | |
|---|---|---|
| found that FLSA collective action opt-in rates typically range between 15-30%, particularly in non-union-backed cases. The Ellis court emphasized the fundamental incompatibility between FLSA's opt-in provisions and Rule 23's opt-out provisions, noting that allowing both mechanisms would undermine Congressional intent. The Kuncl court reinforced that FLSA's opt-in mechanism inherently limits class sizes, attributing low participation to recipients perceiving notices as unimportant. | *estimates [\*\*11] indicating that typically only* **between fifteen and thirty percent of potential plaintiff-employees opt-in**.*" Rachel K. Alexander, Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions, 58 Am. U. L. Rev. 515 (February 2009). The most probable explanation for the low response rate is the idea that "the notice received in the mail is just another piece of junk that the recipient has neither the time nor the interest to read, let alone act on." Ellis v. Edward D. Jones & Co., 527 F.Supp.2d 439, 444 (W.D. Pa. 2007)* Kuncl v. IBM, *660 F. Supp. 2d 1246, \*1250; 2009*<br><br>*Allowing Plaintiffs to "circumvent the [FLSA] opt-in requirement and bring unnamed parties into [\*452] federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions. In Ellis v. Edward D. Jones* | |

|  |  |  |
|---|---|---|
|  | & Co., L.P., *527 F. Supp. 2d 439, \*450;"*<br><br>*Because of these low opt-in and opt-out rates, Rule 23 classes are generally "much larger than the corresponding § 216(b) collective action groups" and the large group is bound by the ultimate judgment if they don't opt-out* Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117,124 |  |
| **Page 16, Lines 8–9**   *Camilo v. Don Vito Ozuna Food Corp., Case No. 5:18-CV-02842-VKD (N.D. Cal.): 37.4% opt-in rate (61 opt-ins from 163 eligible FLSA members)* | Another case I worked on this was not a quote but a math to calculate The percentage of opt ins | This does not seem to be a misquote |
|  |  |  |
| **Page 16, Lines 11–14**<br><br>Ledo v. Prado, Case No. 5:17-CV-02393-LHK (N.D. Cal.): 31.08% opt-in rate (69 opt-ins from 222 eligible FLSA members) | Another case I worked on this was not a quote but a math to calculate The percentage of opt ins. | This does not seem to be a misquote |
|  |  |  |